Curtis Wayne Pope, Jr. v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-195-CR

CURTIS WAYNE POPE JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

INTRODUCTION

A jury found appellant, Curtis Wayne Pope, Jr., guilty of murder, and the trial judge sentenced him to life imprisonment.  In six points on appeal, Pope complains that the trial court erred by (1) allowing the State to elicit testimony regarding Pope’s appointed DNA expert in violation of the work-product component of his attorney-client privilege, (2 & 3) excluding testimony elicited by Pope on cross-examination of certain State witnesses in violation of Pope’s Sixth
 Amendment right of confrontation, (4) improperly instructing the jury, (5) allowing improper jury argument by the State, and (6) overruling his motion for new trial.
(footnote: 1)  We will affirm.  

FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2000, the body of a stabbing victim was found inside a trailer at a construction site.  Blood was found on the office furniture, the floor of the office, and the victim’s clothes.  DNA testing of the blood conducted by GeneScreen, an independent lab, revealed that some of this blood was from Pope, and he was charged with murder.  A plea of not guilty was entered on his behalf.

Prior to trial, Pope filed a Motion for Independent Examination of DNA Evidence, requesting that Robert Benjamin be permitted to “review and examine all reports and testing already performed . . . for purposes of deoxyribonucleic acid (DNA) testing and comparison.”  The trial court granted the motion, and the defense later designated Dr. Benjamin as its DNA expert.

At trial, Pope’s defense counsel cross-examined the State’s DNA experts, William Watson and Jamie King, regarding the method of DNA testing used, the level of “professional judgment” needed to perform DNA analysis, and whether errors were made in the analysis.  On redirect, the trial court allowed the State, over objection of defense counsel, to introduce testimony regarding Dr. Benjamin’s qualifications, the materials provided to him, and whether he had requested additional testing.  Pope’s counsel objected to this line of questioning, partially on the grounds that it violated his client’s work-product and attorney-client privileges.  The trial court overruled this objection and allowed the testimony.  Defense counsel did not call Dr. Benjamin to testify at trial, nor did they present evidence that would indicate to the jury that the defense had even employed a DNA expert.

Part of defense counsel’s trial strategy concerned the mislabeling of samples submitted for DNA testing.  In that regard, defense counsel sought to elicit testimony on cross-examination from Karla Carmichael and Aliece Watts regarding problems at the Fort Worth Police Department’s Crime Lab (the “Crime Lab”).
(footnote: 2)  The testimony was presented outside the presence of the jury in a bill of exception.

In the bill, Carmichael testified that there had been some problems at the Crime Lab with the “misidentification . . . of samples.”  However, when questioned further, Carmichael testified only to a problem with the ventilation hoods at the lab and to problems involving DNA testing performed by the Crime Lab.  On redirect, Carmichael testified that none of the problems had anything to do with the handling or processing of evidence, but arose in the context of DNA analysis, and that the Crime Lab did not do the DNA testing in this case, but instead submitted the samples to Orchid Cellmark
(footnote: 3) for DNA testing.

In the bill, Watts acknowledged that there had been “some problems with the handling of evidence” at the Crime Lab and that there had been some investigations of the handling of evidence at the Crime Lab, but stated that she did not know if the accusations had ever been substantiated.  Further, although Watts acknowledged that there had been accusations of mishandling of evidence, and that as a result there existed the possibility that the evidence in this case could have been mishandled, she indicated by her testimony that she had no evidence that the samples in this case had been mishandled.

Pope was found guilty by the jury and sentenced to life imprisonment by the trial judge.  On the day that the jury returned its verdict, Carmichael was placed on administrative leave from her employment at the Crime Lab.  She was subsequently terminated for, among other things, “[her] failure to perform assigned work in a satisfactory manner” and “[her] carelessness or negligence in performing work.”

Pope filed this appeal on May 9, 2003.  He later filed a Motion for New Trial asserting violations of his due process rights and his Sixth Amendment right to confrontation.  Pope’s Motion for New Trial was overruled by operation of law on July 23, 2003.

WORK-PRODUCT PRIVILEGE

In his first point, Pope complains that the work-product component of his attorney-client privilege
(footnote: 4) was violated when the trial court allowed the State to put on testimony indicating that his DNA expert, Dr. Benjamin, had been provided with the State’s DNA testing and had failed to request additional testing or question the testing.
(footnote: 5)  Further, Pope complains that the trial court committed error when it allowed the State to put on this testimony and then point out that Dr. Benjamin was not called by the defense to testify.  Pope argues that this violates the work-product component of his attorney-client privilege because the jury could have only concluded from this testimony (and the State’s closing argument) that Dr. Benjamin believed that the testing was properly done.

The State contends that the testimony regarding the materials provided to Dr. Benjamin was not work-product and therefore not privileged and that the prosecution may comment on a defendant’s failure to call an expert witness when the comment is directed at a disputed issue. 

A. Standard of Review

 We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.  
Montgomery
, 810 S.W.2d at 391. We will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id
.

B. Analysis

Work-product 

The United States Supreme Court has described the work-product doctrine as sheltering “[a]t its core . . . the mental processes of the attorney, providing a privileged area within which [an attorney] can analyze and prepare his client's case.” 
 Washington v. State
, 856 S.W.2d 184, 187 (Tex. Crim. App. 1993) (quoting 
United States v. Nobles
, 422 U.S. 225, 238, 95 S. Ct. 2160, 2170 (1975)).  The doctrine extends not only to the work-product of the attorney, but to the work-product of his agents. 
Id
. Further, the Texas Court of Criminal Appeals has indicated that the work-product of a court-appointed DNA expert falls within the privilege. 
See
 
Taylor v. State
,
 
939 S.W.2d 148, 152 (Tex. Crim. App. 1996).

While Texas privileges are found in the Texas Rules of Evidence and the Texas Rules of Criminal Procedure, Rule 501 of the Texas Rules of Evidence  provides, in relevant part: “Except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority, no person has a privilege to . . . (2) refuse to disclose any matter; [or] . . . (4) prevent another from being a witness or disclosing any matter or producing any object or writing.”  
Tex. R. Evid.
 501.
 

Article 39.14 of the Texas Code of Criminal Procedure addresses the discovery of work-product in a criminal case.  
Tex. Code Crim. Proc. Ann.
 art. 39.14 (Vernon Supp. 2004-05).  Article 39.14(a) provides that the “work-product of counsel in the case and their investigators and their notes or report” is exempt from discovery.  
Id
. art. 39.14
(a). However, the Texas Code of Criminal Procedure also provides that a trial court may order disclosure of the “name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705” of the Texas Rules of Evidence.  
Id
. art. 39.14
(b).  The State argues that because the Code of Criminal Procedure in article 39.14(a) acknowledges that a party’s work-product is exempt from disclosure, while at the same time providing for the discovery of a testifying expert’s identity in article 39.14(b), the Texas legislature has, by implication, declared that a testifying expert’s identity is not privileged work-product.  We agree that a testifying expert’s identity, once disclosed, is not work-product.

As pointed out by the State, the defense designated Dr. Benjamin as their testifying expert for trial.  Because they did so, we conclude that Dr. Benjamin’s identity is no longer privileged.
(footnote: 6)  
See 
art. 39.14(a) & (b).
 
Further, testimony regarding the witnesses’ knowledge of Dr. Benjamin’s qualifications, and the materials provided to him, cannot be privileged because they do not constitute work-product of the defense.  
See Nobles
, 422 U.S. at 238 (stating that the work-product doctrine shelters, at its core, the mental processes of an attorney); 
Washington
, 856 S.W.2d at 187 (indicating that the work-product doctrine protects, in addition to the mental processes of the attorney, “material prepared by agents for the attorney as well as those prepared by the attorney himself”).  On the other hand, we believe that the testimony elicited by the State regarding Dr. Benjamin’s failure to request additional testing indirectly violated Pope’s work-product privilege because the testimony could have had the effect of disclosing Dr. Benjamin’s mental impressions regarding the absence of a need for further tests.  Thus, the trial court abused its discretion in allowing this part of the testimony.

Harm Analysis

We must conduct a harm analysis to determine if the error would call for reversal of the judgment. 
 Tex. R. App. P.
 44.2.  If the error is constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply Rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).

Pope contends that we should employ a constitutional harm analysis arguing that the State’s violation of his work-product privilege implicates his Sixth Amendment right to effective assistance of counsel.  However, constitutional error within the meaning of Texas Rule of Appellate Procedure 44.2(a) is an error that directly offends the United States Constitution or the Texas Constitution, without regard to any statute or rule that might also apply. 
See Tate v. State
, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Further, with respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required
. 
 Id
.

Here the error was in the erroneous admission of evidence in violation of Pope’s work-product privilege.  While the work-product privilege may have some relationship to Pope’s Sixth Amendment right to effective assistance of counsel, it is not itself a constitutionally protected right.  
See
 
Nobles
, 422 U.S. at 236-37, 241 n.15, 95 S. Ct. at 2169-70, 2171 n.15 (recognizing the work-product privilege in a criminal case is based upon public policy and rejecting the argument that a court order requiring disclosure of work-product violated respondent’s Sixth Amendment right to effective assistance of counsel where order was a result of respondent’s election to make “testimonial use” of report and court order was “limited and conditional”)
; 
Hickman v. Taylor
, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393 (1947) (recognizing in a civil case the work-product doctrine as a privilege based upon public policy).  Further, Pope’s argument is not that he was denied the effective assistance of counsel at trial, but rather that if we allow this type of violation to occur it will make it difficult for attorneys in the future to satisfy their Sixth Amendment duty to fully investigate all possible defenses for fear that their work-product may be used against their clients.  Accordingly, we conclude that the error in this case is not constitutional.

Because we determine that the error is not constitutional, Rule 44.2(b) is applicable. Therefore, we are to disregard the error unless it affected appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  
Kotteakos
, 328 U.S. at 764-65, 66 S. Ct. at 1248.  

As previously discussed, Dr. Benjamin’s identity and qualifications are not work-product, and the testimony regarding the materials provided to Dr. Benjamin was not work-product.  In addition, the State’s comments regarding Pope’s failure to call a DNA expert were not improper because the State is entitled to comment on an accused’s failure to produce testimony from sources other than himself when it is relevant to a disputed issue, and here Pope placed the State’s evidence into dispute. 
 See Jackson v. State, 
17 S.W.3d 664, 674 (Tex. Crim. App. 2000); 
Patrick v. State,
 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996); 
Carrillo v. State,
 566 S.W.2d 902, 912 (Tex. Crim. App. [Panel Op.] 1978).  Further, the testimony regarding Dr. Benjamin’s failure to request additional testing did not directly disclose what Dr. Benjamin’s mental impressions were, rather, the testimony addressed his lack of action, which one might conclude was due to an opinion he held.  Finally, Pope’s assertion that the jury could have only come to the conclusion that the defense’s expert agreed with the State’s experts is a logical conclusion the jury could have reached from admissible evidence; that is, there was a DNA expert who reviewed the state’s materials but was not called as a witness by the defendant.

Evidence of a defendant’s guilt is also a factor to be considered in any through harm analysis. 
 See Motilla v. State
, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).  Factors to be considered in weighing the defendant’s guilt in the harm analysis include the following:  (1) the sufficiency of the evidence to support the conviction; (2) the character of the error and its connection with other evidence; and (3) whether the State emphasized the error. 
See id. 
at 358-59. In this case, there was significant circumstantial evidence of Pope’s guilt. Pope admitted to meeting with the victim shortly before he was killed, he failed to keep an appointment that he and the victim had with another person later that evening, he possessed an unusual knife consistent with the victim’s wounds, and he failed to appear when trial was scheduled to begin.  Further, as previously discussed, Pope’s work-product privilege was violated only indirectly, and there was sufficient admissible evidence from which the jury could have reached the same conclusion.  Finally, although the State in its closing commented that if there had been a problem with the results, Pope would have had Dr. Benjamin or another expert testify, the State did not specifically mention Dr. Benjamin’s failure to request additional testing. Therefore, after reviewing the record, we conclude that, in the context of the entire case against appellant, the trial court’s error in admitting the testimony in question did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  We conclude that the error was harmless. 
 See
 
Tex. R. App. P.
 44.2(b).

Because we determine that any error by the State in eliciting testimony regarding Dr. Benjamin’s failure to request additional testing was harmless, we need not address Pope’s contention that the testimony elicited by the State regarding Dr. Benjamin’s failure to request additional testing, when combined with the State’s comments regarding the defense’s failure to call a DNA expert, constituted a violation of Pope’s work-product.  Accordingly, we overrule Pope’s first point. 

EXCLUDED TESTIMONY OF CARMICHAEL AND WATTS

In points two and three, Pope complains that the trial court erred by excluding certain testimony of State witnesses Carmichael and Watts in violation of Pope’s Sixth Amendment right to confrontation.  Pope claims that the trial court’s exclusion of this testimony violated his Sixth Amendment right to confrontation because the excluded testimony “weighed on” the witnesses’ qualifications and credibility.  Pope argues that this testimony should have been presented to the jury because the DNA evidence was the primary evidence presented against him at trial, and “proof of the ongoing problems with mislabeling and mishandling [of] evidence” was the only meaningful way for Pope to attack Carmichael’s and Watts’s credibility and qualifications.  The State responds that the trial court did not err because the evidence is not relevant or admissible under Rules 401, 402, 403, 404(b), and 608(b) of the Rules of Evidence.  We agree that the trial court did not err in excluding the proffered testimony. 

A. Standard of Review

As previously stated, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  
Burden,
 55 S.W.3d at 608; 
Green
, 934 S.W.2d at 101-02; 
Montgomery
, 810 S.W.2d at 379-80. 

Further, the standard for reviewing the trial court's decision to limit cross-examination of a witness regarding credibility is whether the trial court abused its discretion. 
 Cantu v. State
, 939 S.W.2d 627, 635 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 994 (1997).   

B. Analysis 

The Texas Rules of Evidence provide that to be admissible evidence must be relevant. 
Tex. R. Evid.
 402.  Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Tex. R. Evid
.
 
401.  In determining whether evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved.  
Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  Further, even if the evidence is relevant, Rule 403 mandates its exclusion “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.” 
 Tex. R. Evid.
 403; 
see also Jones v. State
, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997).

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. 
 U.S. Const.
 amend. VI; 
Crawford v. Washington
, 124 S. Ct. 1354, 1359 (2004);
 Davis v. Alaska
, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110 (1974); 
Rankin v. State
, 41 S.W.3d 335, 344 (Tex. App.—Fort Worth, 2001 pet. ref'd).  The right of confrontation encompasses more than the opportunity to physically confront the witnesses.  
Davis
, 415 U.S. at 315, 94 S. Ct. at 1110.  A primary interest secured by the Confrontation Clause is the right of cross-examination.  
Id
., 94 S. Ct. at 1110.

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  
Id
. at 316, 94 S. Ct. at 1110.  The cross-examiner not only is permitted to delve into the witness's story to test the witness's perceptions and memory, but also is traditionally allowed to impeach, i.e., discredit, the witness.  
Id
.  Hence, the right to cross-examine a testifying state witness extends to any matter that could reflect on the witness's credibility.  
Virts v. State
, 739 S.W.2d 25, 28-29 (Tex. Crim. App. 1987).  This includes impeaching the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility.  
Id
. at 29; 
Rankin
, 41 S.W.3d at 345; 
Alexander v. State
, 949 S.W.2d 772, 774-75 (Tex. App.—Dallas 1997, pet. ref'd).  The trial judge should allow the accused great latitude to show any relevant fact that might tend to affect the witness's credibility.  
Virts
, 739 S.W.2d at 29; 
Koehler v. State
, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). Nevertheless, there are several areas where cross-examination may be inappropriate, and in those cases, the trial judge has the discretion to limit cross-examination.  
See Delaware v. Van Arsdall
, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).  A trial judge may limit cross-examination based on concerns about harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant.  
See id
.

Here the excluded testimony was not directed at the credibility or qualifications of the witnesses, but was offered to prove that there were  problems with the identification and handling of evidence at the Crime Lab.  In that regard, the elicited testimony of Crime Lab employee Carmichael only established her knowledge of problems involving DNA testing at the Crime Lab, and the DNA testing in this case was not performed by the Crime Lab.

In addition, although former Crime Lab employee Watts acknowledged that there had been some problems with the mishandling of evidence at the Crime Lab and that there had been some investigation into the mishandling of evidence at the lab, she stated that she did not know if the accusations had ever been substantiated. 
 Further, although Watts testified that there existed the possibility that the evidence in Pope’s case had been mishandled, her testimony was based upon the supposition that 
if
 some evidence had been mishandled at the Crime Lab, it was possible that evidence in this case could have also been mishandled, and that not only was she unaware of its mishandling, but she did not believe the evidence in this case had been mishandled.

 
 Therefore, we conclude that although the testimony may have been relevant to establishing that there were problems with the handling of evidence at the Crime Lab, the trial court could have found the evidence to be irrelevant because neither Carmichael nor Watts testified that there were problems with the handling of the evidence in this case, and the testimony of Carmichael indicated that the problems at the Crime Lab involved DNA testing, which the Crime Lab did not conduct in this case. 
 See 
Tex. R. Evid.
 402.  Likewise, to the extent that the evidence may have “weighed on” the credibility and qualifications of the witnesses, we conclude that trial court could have found the excluded evidence irrelevant and therefore inadmissible. 
 See id
; 
Reed, 
595 S.W.3d at 281.  Further, we believe that the trial court could have found that the evidence was inadmissible under Rule 403 because the trial court could have found that the probative value of the testimony regarding the Crime Lab’s alleged mishandling of evidence was substantially outweighed by the danger of misleading the jury or confusion of the issues.  
See
 Tex. R. Evid.
 403; 
Montgomery
, 810 S.W.2d at 391-93 (indicating that an appellate court should afford deference to a trial court’s Rule 403 balancing determination, reversing only where the ruling lies outside the zone of reasonable disagreement, and providing relevant factors an appellate court should consider in reviewing a trial court’s Rule 403 decision).  

Accordingly, we hold that the trial court did not abuse its discretion in excluding the proffered testimony, thereby limiting Pope’s right of cross-examination.  Pope’s second and third ponts are overruled. 

JURY INSTRUCTIONS 

In his fifth point, Pope complains that the trial court erred in its instruction to the jury on the State’s burden of proof, arguing that the jury instruction improperly contained a definition of beyond a reasonable doubt.  The State responds, and Pope concedes, that this court has previously ruled on this issue and found the instruction not to be improper.  Pope requests, however, that the court reconsider the issue.  We decline to do so.  

The trial court included the following in its charge to the jury regarding the burden of proof: 

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution’s proof excludes all “reasonable doubt” concerning the Defendant’s guilt.

As both Pope and the State acknowledge, this court has addressed the propriety of such an instruction on numerous occasions and found it not to be improper. 
 See, e.g.
, 
Best v. State
, 118 S.W.3d 857, 865 (Tex. App.—Fort Worth 2003, no pet.)  Accordingly, we hold that the instruction given was not
 
improper.  Pope’s fifth point is overruled.

IMPROPER JURY ARGUMENT

In his sixth point, Pope complains that the trial court erred in overruling his objection to improper jury argument by the prosecutor.  Specifically, Pope argues that the State’s remarks during closing argument were improper because they had the effect of accusing defense counsel of “bad faith and insincerity,” striking at Pope over the shoulder of his defense counsel.  The State contends that its remarks were a proper response to closing arguments made by the defense.

A. Standard of Review

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence.  
Barnes v. State
, 70 S.W.3d 294, 308 (Tex. App.—Fort Worth 2002, pet. ref'd).  To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) pleas for law enforcement.  
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection cannot be reversible error unless, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict.  
Tex. R. App. P.
 44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley
, 983 S.W.2d at 259.

B. Analysis

The State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith or insincerity during argument.  
Wilson v. State
, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996), 
abrogated on other grounds by Motilla v. State
, 78 S.W.3d 352 (Tex. Crim. App. 2002).  Uninvited and unsubstantiated accusations of misconduct directed at a defendant's attorney are manifestly improper because they serve to inflame the minds of the jury to the defendant's prejudice.  
McMurrough v. State
, 995 S.W.2d 944, 947 (Tex. App.—Fort Worth 1999, no pet.).  A prosecutor runs a risk of improperly striking a defendant over the shoulder of counsel when the argument personally impugns opposing counsel's character.  
Mosley
, 983 S.W.2d at 259. 

While defense counsel is protected from unwarranted attack by the prosecution, the prohibition “does not create a sanctuary to which defense counsel may retreat with immunity and thereby deny the prosecutor the right to reply to counsel's argument.” 
 Stokes v. State
, 506 S.W.2d 860, 864 (Tex. Crim. App. 1974).  Further, a prosecutor is entitled to respond to an argument by defense counsel that suggests impropriety on the part of the State.  
See Lange v. State
, 57 S.W.3d 458, 467 (Tex. App.—Amarillo 2001, pet. ref'd) (holding that prosecutor's reference to having taken an oath to uphold justice was permissible response to defense counsel's suggestion that prosecution had improperly coached witness); 
Sandoval v. State
, 52 S.W.3d 851, 858 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding that it was permissible for the prosecutor to respond to defense counsel's suggestion that the prosecution manipulated the testimony of a witness). 

During its closing, Pope’s defense counsel attacked the State’s DNA evidence and the presentation of the evidence by the State.  They asserted that the technology used to test the known DNA samples was “not very reliable” and that every sample that the State believed to be a known sample had been “mislabeled or misidentified at some point in the case.”  Defense counsel attacked the State’s presentation of evidence, implying that the State had acted improperly by stating that the State had done its “best to fix every little thing” before it was presented to the jury, that the State did not want the jury to “look at the work,” and that the State had allowed people to testify to things to which that they could not testify.  The defense also suggested that the DNA samples in this case could have been mixed up with the samples from another suspect.

The State responded by commenting that it was the job of defense counsel to attack the DNA—referring to defense counsel’s attacks on the DNA evidence as amounting to “smoke and mirrors,” “red herrings or rabbit trails” designed to throw the jury off—and by cautioning the jury not to be “hoodwinked, . . . buffaloed, . . . [or] spooked” by the defense’s arguments. We conclude that the State’s closing remarks were not suggestive of bad faith or insincerity on the part of opposing counsel, but were responsive to arguments of the defense and therefore not improper.  Accordingly, we overrule Pope’s sixth point. 

MOTION FOR NEW TRIAL

In his fourth point, Pope complains that the trial court abused its discretion by failing to grant his motion for new trial based upon the discovery of new information relating to State witness Carmichael’s employment status with the Crime Lab.  The State responds that Pope failed to establish that he was entitled to a new trial based upon this newly discovered evidence and that if any error is deemed to exist, Pope failed to preserve it.  We agree that any alleged error was not preserved. 

To preserve error, the complaint on appeal must comport with the objection made at trial.  
See
 
Thomas v. State
, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); 
Cate v. State
, 124 S.W.3d 922, 933 (Tex. App.—Amarillo 2004, pet. ref’d); 
Brown v. State
, 6 S.W.3d 571, 582 (Tex. App.—Tyler 1999, pet. ref’d). 

Pope’s Motion for New Trial complains, in relevant part, that Pope’s due process rights were violated when the State failed to correct the false testimony of two of the State’s witnesses, Sundaye Lopez and Karla Carmichael.  In his motion, Pope alleges that Lopez and Carmichael testified falsely about whether there were any problems with Carmichael’s work at the Crime Lab and whether Carmichael was the subject of any internal investigation.  Pope based his assertions on information obtained after trial, which revealed that on the day the jury returned its verdict Carmichael was placed on administrative leave from her employment at the Crime Lab and that she was subsequently terminated.  In response, the State filed an affidavit from Robert L. Adkins, the Acting Laboratory Supervisor for the Fort Worth Police Department Forensics Laboratory, which indicated that “[t]here was not an investigation into the handling of evidence in the Fort Worth Police Department Forensic Laboratory”; that “[t]here was not an investigation of Sundaye Lopez”; and that “Karla Carmichael was investigated for failing and altering a proficiency test.”  Further, Adkins’s affidavit provided the reasons for Carmichael’s termination, which included, among other things, her 
“failure to perform assigned work in a satisfactory manner” and her “carelessness or negligence in performing work.”

On appeal, Pope complains that the trial court erred by not granting a new trial based upon the newly discovered evidence that Carmichael had been placed on administrative leave, was under investigation at the time of trial, and was subsequently terminated for her “failure to perform assigned work in a satisfactory manner” and her “carelessness or negligence in performing work.” Thus, Pope’s complaint on appeal is that he was not allowed to fully and fairly litigate Carmichael’s credibility and qualifications before the jury.  But, his Motion for New Trial complained that his due process rights were violated because the State failed to correct the alleged false testimony of two of the State’s witnesses.  We conclude that Pope’s complaint on appeal does not comport with Pope’s Motion for New Trial. Accordingly, we need not address whether the trial court abused its discretion in denying the motion. Pope’s 
fourth point is overruled. 

CONCLUSION

Because we overrule Pope’s six points, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE 

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED:  December 23, 2004

FOOTNOTES
1:
We address Pope’s points in this order for ease of discussion.

2:
The defense also solicited testimony from Crime Lab employee Sundaye Lopez, but does not raise the issue of her excluded testimony on appeal.

3:
Formerly known as GeneScreen.

4:
Although Pope refers to the work-product privilege as a component of the attorney-client privilege, we note that these two privileges protect separate interests. 
See
 
Carmona v. State
,  941 S.W.2d 949, 953 (Tex. Crim. App. 1997). 

5:
We find nothing in the record to indicate that the State elicited testimony regarding Dr. Benjamin’s failure to “question the testing.”

6: The State also argues that by filing a motion requesting the trial court to order that Dr. Benjamin be permitted to receive “all reports and testing already performed” by one of the State’s experts, Pope “affirmatively waived” any privilege he might have had in the identity of Dr. Benjamin and in whether he received the reports.