COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-093-CR

 

DOMETRIUS BRAZELTON                                                         APPELLANT

 

V.

 

THE STATE OF TEXAS                                                                STATE

 



 

                                              ------------

 

           FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------      

I.  Introduction








A jury convicted Appellant Dometrius Brazelton of
murder and assessed his punishment at forty years=
confinement.  In two issues, Brazelton
argues that the trial court committed reversible error by denying him wide
latitude in his cross-examination of a punishment phase witness and by denying
the motion for mistrial he made during the punishment phase of trial.  We will affirm.  

II. Factual
and Procedural Background

On April 15, 2004, Brazelton shot and killed Eric
Hill, Sr. in the alleyway of an apartment complex.  As a result, the State charged and the grand
jury indicted Brazelton for murder.  A
jury found Brazelton guilty of murder.  

At the punishment phase of trial, Adella Greer
testified that she knew Brazelton because they formerly attended the same
church.  She also testified that
Brazelton broke into her apartment and assaulted her in 2001.  Brazelton was convicted of misdemeanor
assault for his assault on Greer and stipulated that he had been convicted of
misdemeanor assault on February 21, 2001. 
Greer testified that she no longer attended the church where she had met
Brazelton.  Specifically, Greer
testified:

Q: The church that you
attended, do you continue attending that church?

 

A: No, I stopped going a
long time ago.

 








The State did not ask any additional questions after this answer by
Greer.     During his cross-examination of
Greer, Brazelton sought to question her 
about her reasons for leaving her church, and claimed that the State had
opened the door to this line of questioning by asking the question listed
above.  Brazelton theorized that Greer
had been asked to leave the church because she was having illicit relationships
with married men within her church. 
Brazelton claimed that, as a fellow church member, he had counseled her
not to engage in these relationships and that, in retaliation, she had
fabricated the assault charges against him. 


The trial court permitted Brazelton to take Greer
on voir dire outside the presence of the jury. 
On voir dire, Greer denied having these alleged affairs.  After hearing Greer=s
testimony on voir dire and the State=s
relevance objections, the trial court ruled that it would not permit
cross-examination concerning any alleged relationships with married church
members.    

During the punishment phase, Brazelton offered
the testimony of Leonard McEachern, Brazelton=s
roommate, to refute Greer=s testimony.  McEachern testified that Greer was known as a
dishonest person.

After hearing all of the punishment phase
evidence, the jury assessed Brazelton=s
punishment at forty years= confinement in the
Institutional Division of the Texas Department of Criminal Justice.  Brazelton timely filed his notice of appeal,
and this appeal followed.  

III.
Limitation of Cross-Examination








In his first issue, Brazelton argues that the
trial court committed reversible constitutional error and impinged upon his
Sixth Amendment Confrontation Clause rights when it denied him wide latitude to
challenge Greer=s credibility in his
punishment-phase cross-examination of her. 
The State counters that the trial court properly limited Greer=s
cross-examination to relevant matters, that Brazelton=s
Confrontation Clause rights were not stifled, and that, in any event,  any error was harmless. See Tex. R. Evid. 608(b); Tex. R. App. P. 44.2. 

The Sixth Amendment guarantees a defendant the
right to confront the witnesses against him or her.  U.S. Const. amend. VI; Pointer v. Texas,
380 U.S. 400, 400-01, 85 S. Ct. 1065, 1065 (1965).  A primary interest secured within that right
is the right of cross‑examination. 
Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App.
1996).  That right is violated when a
trial court improperly limits appropriate cross-examination. Id.  








Although the right to cross‑examine a
testifying witness extends to any matter that could reflect on the witness's
credibility, including impeaching the witness with relevant evidence that might
reflect bias, interest, prejudice, inconsistent statements, traits of character
affecting credibility, or evidence that might go to any impairment or
disability affecting the witness's credibility, the trial court may limit such
cross‑examination based on concerns about harassment, prejudice,
confusion of the issues, the safety of the witness, or interrogation that is
repetitive or only marginally relevant.  See,
e.g., Pope v. State, 161 S.W.3d 114, 123 (Tex. App.CFort
Worth 2004) (citing numerous authorities), aff=d, 207
S.W.3d 352 (Tex. Crim. App. 2006), cert. denied, 127 S. Ct. 2053 (2007).

Those limitations are permissible because the
Sixth Amendment merely Aguarantees an opportunity for
effective cross‑examination, not cross‑examination that is
effective in whatever way, and to whatever extent, the defense might wish.@  Delaware v. Van Arsdall, 475 U.S. 673,
679, 106 S. Ct. 1431, 1435 (1986); see also Carpenter v. State, 979
S.W.2d 633, 634‑35 (Tex. Crim. App. 1998).  Thus, cross-examination may be limited
without running afoul of the Sixth Amendment if it is not calculated to reveal
bias or motive to testify falsely.  Carroll,
916 S.W.2d at 497-98.








Here, Brazelton cross-examined Greer in an effort
to show that Greer supposedly left her church because she had been having
affairs with married men and that, because Brazelton had rebuked her for her
conduct, she had lied about his assault on her. 
But such a showing is simply not evidence that might reflect bias, interest,
prejudice, inconsistent statements, traits of character affecting credibility,
or evidence that might go to any impairment or disability affecting Greer=s
credibility.  See, e.g., Pope, 161
S.W.3d at 123.  In her testimony before
the jury, Greer did not give any reason for leaving the church.  And, in light of Brazelton=s
stipulation as to his prior conviction for assaulting Greer, the fact of the
assault was established; no bias, interest, or prejudice by Greer would seem
exposed by delving into her alleged motive for bringing charges that Brazelton
stipulated to.  Accord Smith v. State,
158 S.W.3d 463, 465 (Tex. Crim. App. 2005) (recognizing that when a defendant
stipulates to a prior conviction, he cannot later argue the falsity of that
conviction).  And finally, Brazelton was
able to put Greer=s credibility at issue during
his direct, punishment-phase examination of McEachern, Brazelton=s roommate.  As previously mentioned, McEachern testified
that Greer=s reputation for being truthful
was bad.








Under these circumstances and after hearing Greer=s testimony
on voir dire, we hold that the trial court did not abuse its discretion by
limiting Brazelton=s punishment-phase
cross-examination of Greer to prevent him from delving into the alleged reasons
that she left her former church[2]
and that the trial court=s limitation on Brazelton=s
cross-examination of Greer did not impermissibly restrict Brazelton=s
Confrontation Clause rights.  See
Delamora v. State, 128 S.W.3d 344, 365 (Tex. App.BAustin
2004, pet. ref=d).  We hold that the trial court=s ruling
at least lies within the zone of reasonable disagreement.  We overrule Brazelton=s first
issue.

IV. Motion
for Mistrial

In his second issue, Brazelton complains that the
trial court erred by denying his motion for mistrial after the State engaged,
in bad faith, in an impermissible, prejudicial line of punishment-phase
questioning directed towards McEachern.

In reviewing a trial court=s ruling
on a motion for mistrial, we apply an abuse of discretion standard and will
uphold the ruling if it is within the zone of reasonable disagreement. Wead
v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).  Mistrials are required only when improper
evidence is offered to clearly inflame the minds of the jury and is of such a
degree as to suggest the impossibility of withdrawing the impression from the
minds of the jury.  Hinojosa v. State,
4 S.W.3d 240, 253 (Tex. Crim. App. 1999). 
When making this determination, we must look to the facts and
circumstances of the case.  Id.
(citing Hernandez v. State, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), cert.
denied, 500 U.S. 960 (1991)).








When a trial court instructs the jury to
disregard certain testimony, we presume that the jury followed the instruction
and did not consider the improper evidence during deliberations.  See Colburn v. State, 966 S.W.2d 511,
520 (Tex. Crim. App. 1998); Waldo v. State, 746 S.W.2d 750, 752-54 (Tex.
Crim. App. 1988) (jury presumed to follow instructions to disregard improper
evidence).  Prompt curative instructions
to disregard are ordinarily effective and will cure error regarding prior
offenses.  See Nobles v. State, 843
S.W.2d 503, 514 (Tex. Crim. App. 1992); see Ovalle v. State, 13 S.W.3d
774, 783 (Tex. Crim. App. 2000). 

Brazelton contends that McEachern was his most
critical punishment phase witness because he had personal knowledge of Greer=s
reputation within the community.  On
direct examination, McEachern testified that Greer=s
reputation for honesty within her church community was bad.  During cross-examination, the State asked
McEachern if he had ever been convicted of a felony or theft.  Brazelton=s
attorney promptly objected and the jury was excused.  After the jury was excused, the State took
McEachern on voir dire and established that McEachern had been placed on
deferred adjudication approximately twenty years earlier, but had since had no
other contact with law enforcement.  








Following the State=s voir
dire of McEachern, Brazelton=s trial
counsel moved for a mistrial.  The trial
court denied the motion.  After the jury
was reseated, the trial judge proceeded to instruct the jury to disregard the
previous question and partial answer.  In
his instruction, the trial judge had the question read back to the jury and
then stated, AI=m
ordering you to disregard the question and I=m
ordering you to disregard the partial answer and not consider it for any
purpose in evaluating the weight or the credibility of the testimony of this
witness.  It=s not
allowed.  It plays no part in this trial.
Does everyone understand that?@  Several of the jurors verbally acknowledged
that they understood.  

After reviewing the record, we hold that a
mistrial was not required because the trial court gave prompt curative
instructions to disregard the question and partial response, and because the
question was not of such a degree as to suggest the impossibility of
withdrawing any impression from the minds of the jury. See Hinojosa, 4
S.W.3d at 253; Nobles, 843 S.W.2d at 514.  We therefore overrule Brazelton=s second
issue.  

V. Conclusion

Having overruled both of Brazelton=s
issues, we affirm the judgment of the trial court.                  

 

PER
CURIAM

 

 

PANEL F: WALKER, J.;
CAYCE, C.J.; and MCCOY, J.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: July 12, 2007











[1]See Tex. R. App. P. 47.4.





[2]To the extent that
Brazelton=s desired line of
punishment-phase cross-examination of Greer was an effort to establish that she
purportedly had affairs with married men, that line of questioning is prohibited.  See Tex.
R. Evid.  608(b) (providing that A[s]pecific instances of
conduct of a witness, for the purpose of attacking or supporting the witness= credibility, other than
conviction of crime as provided by Rule 609, may not be inquired into on
cross-examination of the witness nor proved by extrinsic evidence@).