

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00431-CR

———————————————

RYAN WILLRICH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1645889

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Ryan Willrich appeals his murder conviction and life sentence. In his only appellate issue, Willrich argues that the trial court reversibly erred by excluding from evidence Defendant's Exhibit 2, a single page from his medical records containing a statement he had made to a surgeon. Because Willrich was not harmed by the exclusion of this evidence, we will affirm.

**Background**

Willrich does not challenge the sufficiency of the evidence to support his conviction. To inform our harm analysis, however, we provide a summary of the facts proven at trial.

Sam,[1] the deceased, was close friends with Spencer Washington. They had known each other since childhood and were "like brothers." One night in 2020, Spencer drove Sam to a hamburger restaurant in east Fort Worth so that Sam could pick up his daughter, Sally, from her mother, Sandra. Sandra arrived at the restaurant first and pulled into line at the drive-through. Willrich was riding in the front passenger seat of her car, and Sally was in the back seat along with Robin, who was Sandra's child by Willrich.

---

[1]To protect the identities of the minor children involved in this case, *see* Tex. R. App. P. 9.10(a)(3), we refer to them and their parents—except for Willrich—by pseudonyms.

While Sandra, Willrich, and the children were in the drive-through line, Spencer and Sam pulled into the restaurant's parking lot. Sam got out of Spencer's car, jogged over to Sandra's car, and waved at her. Before they could say anything to each other, Sandra "heard two shots go off." She saw that Willrich had a gun. She recognized the gun as a purple handgun that she kept in a backpack in between the center console and front passenger seat of her car. Sam fell to the ground, and Sandra saw blood coming out of his mouth. She screamed at Willrich, "[T]hat's [Sally's] daddy[! W]hy did you do that[?]" Meanwhile, Spencer got out of his car with a .40 caliber semiautomatic pistol, ran over to Sandra's car, and fired eight shots into her car, shattering her back windshield and striking Willrich. He then ran back to his car, got in, and drove away. Sam died at the scene, but Willrich survived and was charged with Sam's murder.

Sandra and Spencer both testified at Willrich's trial. Spencer admitted that he intentionally shot Willrich after seeing him shoot Sam. Sandra recalled hearing Spencer say at the time either "you shot my cousin or you killed my cousin, one of those." She also testified to her opinion that Spencer was trying to defend Sam when he shot Willrich. Spencer remembered looking at Sandra when he "pulled [Sam] up on the sidewalk" and telling her that Sam "was killed for no reason."

Surveillance footage from the restaurant was admitted into evidence.[2] The video showed Spencer's car pulling into a parking space and Sam exiting the vehicle and jogging across the parking lot, out of frame. Although the video did not capture the shooting, two gunshots can be heard, after which Spencer can be seen exiting his vehicle and running over to the same area where Sam had gone. Eight more gunshots, in rapid succession, can then be heard, followed by an unidentified woman's voice yelling, "Call the ambulance now, now!"

After the State rested, Willrich offered in evidence thousands of pages of medical records from the hospital where he spent several days after being shot by Spencer. The State objected under hearsay;[3] specifically, the following statement appeared on one page of the records: "patient reports that he was in line for food on Lancaster when he thinks someone attacked him and tried to kill him." The State objected "to all the exhibits in their entirety because the only purpose that [Willrich was] offering [the evidence] for [wa]s to get [his] self-serving statement in front of the

---

[2]Rhona Wedderien, the forensic litigation support specialist for the Tarrant County District Attorney's office, testified that she created the video to which we refer by taking the audio from one recording and overlaying it with the video from another recording.

[3]"Hearsay" means a statement that (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). Hearsay is not admissible unless a statute, the Rules of Evidence, or other rules prescribed under statutory authority provide otherwise. Tex. R. Evid. 802.

jury."[4] The trial court sustained the State's objection but admitted the medical records in their entirety for the record only. Willrich then rested his case without calling any witnesses or offering any other evidence. The jury found Willrich guilty of murder, and after hearing more evidence and arguments at the trial on punishment, the trial court assessed Willrich's punishment at life in prison.

## Discussion

On appeal, Willrich complains only of the trial court's exclusion of his Exhibit 2, the one-page exhibit on which his statement to the doctor about being "attacked" while waiting in line for food appears. He does not deny the hearsay nature of the statement but argues that it was admissible as a statement made for medical diagnosis or treatment, *see* Tex. R. Evid. 803(4), and because it was "necessary to explain or contradict acts or declarations first offered by the State," *see Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988) (quoting *Singletary v. State,* 509 S.W.2d 572, 576 (Tex. Crim. App. 1974)). The State, relying on the rule against hearsay and the general rule in Texas that "self-serving declarations are not admissible in evidence as proof of the facts asserted," *see id.*, argues that the statement was not admissible under either exception. Assuming without deciding that the trial court erred by sustaining the State's objection and excluding the exhibit, any such error was harmless and therefore not reversible.

---

[4]Willrich's immediate response to this objection was, "That may, in fact, be the case."

5

Willrich and the State disagree on what harm analysis should apply here. Willrich contends that excluding his statement "violated his constitutional right to present a complete defense" and was thus "of constitutional weight." He says that the trial court's ruling should be analyzed for harm under Texas Rule of Appellate Procedure 44.2(a), which provides, "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). The State counters that "Willrich cannot show a constitutional violation" and that, even if the trial court erred in excluding Willrich's statement, "such error did not have a substantial and injurious effect or influence in determining the verdict." *See* Tex. R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.").

Having reviewed the parties' arguments and applicable case law, we believe that any error in the trial court's exclusion of Willrich's Exhibit 2 should be analyzed as "other error" under Rule 44.2(b). A constitutional error within the meaning of Texas Rule of Appellate Procedure 44.2(a) "is an error that directly offends the United States Constitution or the Texas Constitution, without regard to any statute or rule that

6

might also apply." *Pope v. State*, 161 S.W.3d 114, 121 (Tex. App.—Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006). Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule 44.2(b) if the trial court's ruling merely offends the Rules of Evidence. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Walters v. State*, 247 S.W.3d 204, 222 (Tex. Crim. App. 2007) (holding exclusion of evidence supporting defendant's defensive theory was nonconstitutional error when it did not prevent defendant from presenting a defense).

Willrich contends that the erroneous exclusion of his "exculpatory" statement in Exhibit 2 denied him his right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV. The right to due process of law includes within it the right to a fair trial. *Marx v. State*, 987 S.W.2d 577, 581 (Tex. Crim. App. 1999). When a trial court sustains the State's objection to the admission of a defendant's evidence, a federal due process violation may arise only if (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense or (2) the trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014); *Walters*, 247 S.W.3d at 219; *see also Tiede v. State*, 76 S.W.3d 13, 14 (Tex. Crim. App. 2002).

7

In *Walters*, the trial court abused its discretion in excluding the appellant's self-serving statement to a 911 operator. 247 S.W.3d at 205–06. The Court of Criminal Appeals held that that error was non-constitutional. *Id.* at 206. The Court reasoned that "the erroneously excluded evidence was relevant to [the] appellant's self-defense theory, but its exclusion did not prevent him from presenting a defense." *Id.* at 222. Because the excluded testimony would have only "incrementally" furthered the appellant's defensive theory (self-defense), the Court ruled that the error was not of constitutional dimension. *Id.* at 221–22 (quoting *Ray v. State,* 178 S.W.3d 833, 836 (Tex. Crim. App. 2005)).[5]

The same logic leads us to the same conclusion in this case. Because Willrich did not make an opening statement, testify, call any witnesses, or get any exhibits into

---

[5]More recently, in *Wells v. State*, the Court of Criminal Appeals analyzed a trial court's erroneous exclusion of a defendant's self-serving statements as constitutional error under Rule 44.2(a). 611 S.W.3d 396, 409–23 (Tex. Crim. App. 2020). The Court made clear in *Wells*, though, that it was analyzing the error for constitutional harm "[b]ecause the erroneous exclusion of relevant mitigating evidence offered by a defendant facing a possible death sentence implicates the Eighth Amendment." *Id.* at 410. Willrich was not facing the death penalty, and he did not offer his statement in evidence as mitigation. He also has not made an Eighth Amendment argument for the admissibility of his statement. And, even in *Wells*, the Court stated that the defendant "ha[d] not demonstrated a constitutional due process violation because the trial court's ruling did not prevent him from presenting the substance of his defense to the jury. . . . The excluded [evidence] was not critical to [his] defense, and the trial court's exclusion of it did not deprive [the defendant] of a fundamentally fair trial." 611 S.W.3d at 423. The same can be said of Willrich's statement at the hospital in this case.

evidence for the jury's consideration, we look to his closing argument at the trial on the merits for his defensive theory.

Willrich's defensive theory, as argued to the jury, was that the State had not proven beyond a reasonable doubt that he intentionally and knowingly killed Sam. He claimed that he "had no idea who was at that window when he shot" and that all he knew was that he had to protect himself, Sandra, and the children. He reminded the jury of what the State's evidence had shown and argued that Sam "did not let them know in any way that [he and Spencer] were there parked and coming over to the car" and that they were in "a bad part of town . . . late at night." He emphasized that he and Sam had "no connections," "no animosity," "no jealousy," and "no bad blood between" them. He argued that it made "no sense whatsoever" that he had motive to shoot Sam but that "[w]hat ma[de] sense is he thought there was somebody there threatening them[,] and he was taking care of it." Willrich was thus able to present a defense.

Because the trial court's error, if any, in excluding Willrich's Exhibit 2 did not prevent him from presenting a defense, we hold that any such error "was not of constitutional dimension." *See Walters*, 247 S.W.3d at 222. Our harm analysis is therefore governed by Rule 44.2(b). Tex. R. App. P. 44.2(b).

Under Rule 44.2(b), neither the defendant nor the State has the burden to prove harm or harmlessness as to whether the appellant's substantial rights were affected; rather, we have the duty to assess harm by independently examining the

record as a whole. *Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021). An error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

Considering the record as a whole, we can reach no other conclusion but that the exclusion of Willrich's Exhibit 2 did not affect his substantial rights. As we have just discussed, Willrich was able to present his defensive theory—that he was attempting to protect himself and his family when he shot Sam, not realizing who he was—to the jury. His statement to the doctor at the hospital would not have furthered this defensive theory.

The context of Willrich's statement is critical here. The full paragraph of the doctor's notes containing Willrich's statement about being attacked reads as follows:

10

30 y.o. male presents by EMS for reported GSW with multiple wounds on the back of the head, neck, shoulder, scapula, and arm. En route EMS resuscitated patient with 1 g of TXA and 2L bolus. [P]atient reports that he was in line for food on Lancaster when he thinks someone attacked him and tried to kill him. He reports some tingling to the arms and legs and some pain to his posterior neck and head. He reports some pain to the left forearm as well.

Read in context, Willrich made his statement about being "attacked" while waiting in line for food as a way to explain his gunshot wounds. The uncontested evidence at trial showed that those gunshot wounds were inflicted by Spencer.[6] There was no evidence from any source, including the medical records that Willrich proffered, that Sam had "attacked" Willrich or otherwise caused his injuries, and Willrich does not contend otherwise.[7]

Perhaps the most compelling reason why Willrich was not harmed by the exclusion of his statement is that the jury received plenty of other evidence that Willrich was "attacked." Again, it was uncontested at trial that Spencer shot Willrich. Spencer admitted on the witness stand that he had shot Willrich multiple times. He

---

[6]This belies Willrich's appellate contention that his statement "directly explained a motive for Willrich's shooting of" Sam and "directly contradicted" Sandra's and Spencer's testimony that Willrich shot Sam with no provocation before being attacked by Sam.

[7]For this reason, Willrich's appellate contention that "[h]ad the statement been admitted into evidence, Willrich could have [had] the jury charge include the law of self-defense" fails. *See* Tex. Penal Code Ann. § 9.31(a) (providing that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force").

11

testified that his "intent was to shoot . . . Willrich." Willrich also elicited testimony from Sandra that she did not see him point a gun, fire a gun, or threaten Spencer in any way. Other than providing more detail about the nature of Willrich's injuries, the only part of his statement that would have told the jury something not established by the evidence admitted for their consideration was Willrich's thought that "someone . . . tried to kill him," something that the jury could have inferred from the evidence before them and would have had, at most, only a slight effect on their verdict. *See Wells*, 611 S.W.3d at 423 ("Better evidence of [the matter that the defendant was seeking to prove] came in through a variety of other sources, and the exclusion of the [evidence] could not have affected the jury on the mitigation issue.").

Finally, we note that the excluded statement may not have helped Willrich's case at all. Although a jury might have drawn an inference favorable to Willrich from the evidence, it could also have inferred that the statement evinced the guilty mind of a man who had just committed murder and was trying to fabricate a justification for his actions. *Cf. Lagaite v. State*, 995 S.W.2d 860, 863–64 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) ("Although the statement defendant wished to offer may have suggested he did not know [the deceased] had been murdered, a jury could also have believed [that defendant] made the statement in an effort to cover up the murder.").

We conclude that, in the context of the entire case against Willrich, the trial court's alleged error in excluding Willrich's Exhibit 2 did not have a substantial or

12

injurious effect on the jury's verdict and did not affect Willrich's substantial rights. *See King v. State*, 953 S.W.2d 266, 271–73 (Tex. Crim. App. 1997). Thus, we must disregard the trial court's alleged error. *See* Tex. R. App. P. 44.2(b). We overrule Willrich's only issue.

## Conclusion

Having overruled Willrich's only issue, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025