Janet McDANIEL, Appellant,

v.

The STATE of Texas, State.

No. 2–98–206–CR.

Court of Appeals of Texas, Fort Worth.

Sept. 16, 1999.

Rehearing Overruled Nov. 4, 1999.

Jeff Kearney, Wm. Reagan Wynn, Kearney & Westfall, Fort Worth, for appellant.

Bruce Isaacks, Dist. Atty., Yolanda M. Joosten, Jonathan Bailey, Debra Bender, Asst. Dist. Attys., Denton, for appellee.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

A jury found Appellant Janet McDaniel guilty of forgery. In eleven points, she contends the trial court erred when it denied her motion to quash, excluded certain character evidence, charged the jury that a person's mental state may be inferred, and limited her cross-examination of the complainant.

We will focus solely on the issue of whether it was error to prohibit cross-examination of the complainant regarding the existence of a child support arrearage judgment against him in Appellant's favor. Because we determine that the trial court abused its discretion in limiting constitutionally guaranteed cross-examination, and that such error was not harmless, we re-

verse the conviction and remand this case for trial.

## PROCEDURAL BACKGROUND

Appellant was charged by information and complaint with one count of forgery; she entered a plea of not guilty. After hearing pretrial motions, a jury was selected, and the State called a single witness, Greg McDaniel, ("complainant") who is Appellant's ex-husband. The defense proposed two witnesses[1] in the guilt-innocence phase, one of which testified in the jury's presence that in her opinion, the complainant was untruthful and dishonest regarding Appellant and the family situation. The jury returned a verdict of guilty, and assessed punishment at 30 days' confinement plus a $2,000 fine. The trial court suspended imposition of the jail sentence and ordered that Appellant be placed on community supervision for two years. Appellant gave timely notice of appeal.

Appellant's tenth point is dispositive; therefore, we will only address it.

## IMPROPER RESTRICTION OF CROSS-EXAMINATION

Appellant contends in point ten that the trial court abused its discretion by limiting Appellant's cross-examination of the complaining witness concerning bias in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution.

1. The first witness, Dr. Mahlon Freeman, who knew Appellant in a professional capacity from 1985 to 1994, would have testified that in his opinion, Appellant was an honest person and that there were no discrepancies in the corporate books of which she had control. The trial court sustained the State's objection and Freeman did not testify before the jury. The second witness, who ultimately testified before the jury, was Jean Campbell, Appellant's aunt.

2. The complainant testified on redirect that he had never seen those checks and had no knowledge that she had signed his name on them.

The complainant testified that the day after their divorce hearing, he learned about a Visa card that had been opened in his name. He obtained a copy of the application for the card. He recognized Appellant's printing and signature on the application. The application also contained a signature purporting to be his, but it was not. He never gave Appellant permission to sign his name on the application, nor did he ever discuss applying for that card with her. Two weeks after the application was made, Appellant had the mail diverted to a post office box, and as a result, the complainant never received any bills from that credit card company. The complainant further testified that Appellant admitted to him that she had signed his name on the credit card application in question.

Appellant's counsel, during cross-examination, introduced five paychecks that the complainant received in 1990, two of which were endorsed by Appellant with the name "Greg McDaniel."[2] There was only one credit card account application that the complainant was claiming to be a forgery.[3]

After confirming that complainant and Appellant had gone through a bitter divorce, counsel for Appellant attempted to cross-examine the complainant about a $9,480 child support arrearage judgment held by Appellant against complainant at the time of trial. After the jury was excused in accordance with a pretrial ruling,[4] the following exchange occurred:

3. Defense counsel asked, "[t]o your knowledge, she only forged one credit card application[?]" The complainant replied "[t]hat's correct."

4. The trial court ruled that counsel will approach the bench concerning the admissibility of any matters "outside the parameters" of the fact that the complainant and Appellant had just divorced when the complainant allegedly first learned about the credit card application in his name. The court granted paragraph one of the State's motion in limine, ordering that the parties refrain from mentioning the following in the presence of the jury until the court determines the admissibil-

[DEFENSE COUNSEL]: [T]here's a $10,000 judgment for back child support against [complainant] involving this case where he owes [Appellant] that amount of money, maybe 9,000 and some change.

THE COURT: Involving this case, the forgery case?

[DEFENSE]: No, in the divorce. Well, I say in this case, in the divorce case that is the subject of this case. The point is there's a civil judgment against this witness involving [Appellant].

THE COURT: When was the judgment taken?

[DEFENSE]: It was taken October 1, 1997. It's in effect now, and it's our intention that it affects his credibility as a witness.

THE COURT: And for what dates were they as to when the child support wasn't paid?

[DEFENSE]: January 1996 through March of 1997. The total arrearage at the time of this order was $9,480.

THE COURT: And how in the world could that have any relevancy to something that happened five years before?

[DEFENSE]: It's our position that this affects his credibility and his motive for testifying right now on April 22, 1998, the fact that this judgment, at any time that it was entered, as long as it's valid gives him a reason to slant his testimony and to say things that are not true to get back at Janet because she's the one that has the judgment against him.

THE COURT: State have any objection to that?

[PROSECUTOR]: Well, arguably the same thing goes— we could relitigate their entire divorce because that goes to motive of both he and any other witnesses that come, and that's absolutely irrelevant as to whether or not she forged a document back in 1991. The charge has been pending ever since, and what happened in '96 or '97 as the Defense Counsel just stated is completely irrelevant as to whether or not those facts happened.

THE COURT: I most assuredly sustain the objection. I can't see how this has any relevance, and if it does, it's prejudicial value is far outweighed by any probative value as to some matter that happened five years before. I'm not going to allow that, no.

[DEFENSE]: Can I go ahead and offer this for the record, which is the order showing that he owes money and so forth?

THE COURT: Sure.

## I. STANDARD OF REVIEW

We review the trial court's decision to exclude evidence under an abuse of discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). An abuse of discretion occurs when the trial court acts without reference to any guiding principles or rules. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1991) (op. on reh'g); *Breeding v. State*, 809 S.W.2d 661, 663 (Tex.App.—Amarillo 1991, pet. ref'd).

 Where the excluded evidence is sought during cross-examination, the Confrontation Clause of the United States Constitution is implicated. *See* U.S. CONST. amend. VI; *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986). Errors of

---

ity of same: "[t]he reasons for or conditions surrounding the breakup of the marriage between [Appellant] and Complainant, Greg McDaniel, indluding [sic] but not limited to allegations of infidelity or emotional, sexual or physical abuse or neglect of [Appellant]

and the children of the marriage, the terms and conditions of the Temporary Orders or the Final Divorce Decree, and which party was awarded custody of the children of the marriage."

this sort are subject to a harm analysis, and must be reversed unless the court finds, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. *See* Tex.R.App. P. 44.2(a); *Shelby v. State,* 819 S.W.2d 544, 547 (Tex. Crim.App.1991).

## II. Confrontation, Cross-Examination, and Relevance

■ The Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right is made obligatory on the States by the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). There are three main purposes of cross-examination: (1) to shed light on the credibility of the direct testimony; (2) to elicit additional facts related to those brought out on direct; and (3) in states following the "wide open" rule, to bring out additional facts that tend to illuminate any issue in the case. *See* Kenneth Broun et al., McCor-mick on Evidence § 29, at 38–39 (John William Strong ed., West Publishing Co., 4th ed.1992). *See also Carroll v. State,* 916 S.W.2d 494, 498 (Tex.Crim.App.1996) (characterizing the purposes of cross-examination as: to identify the witness within his community so that independent testimony may be offered regarding his reputation for veracity; to allow the jury to assess witness credibility; and to allow facts to be brought out tending to discredit the witness by showing his testimony on direct was untrue or biased). The usual standard of relevancy applies to facts sought to be elicited for the purpose of either the second or third category, but as to the function of evaluating the credibility of the evidence given on direct, the test of relevancy is not whether the answer sought will expound any of the main issues, but whether it will aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony. *See* Broun et al., *supra,* at 39.

Rule 104 gives the trial court considerable discretion in determining the admissibility of evidence. *See* Tex.R. Evid. 104(a). But it "does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." *Id.* 104(e).

■ It follows that where the purpose of cross-examination is to shed light on the weight or credibility of the testimony given on direct, the trial court's discretion is more attenuated; a defendant should be given an opportunity to bring out facts which would tend to discredit a witness by showing his testimony was untrue or biased. *See id.; Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). The scope of appropriate cross-examination is broad, and a defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify. *See Carroll,* 916 S.W.2d at 498. Indeed, cross-examination for this purpose is "always relevant as discrediting the witness and affecting the weight of his testimony." *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

■ This is not to say, however, that the trial court may not limit cross-examination when a subject is exhausted, or when it is designed to annoy, harass, or humiliate, or when it might endanger the personal safety of the witness. *See Carroll,* 916 S.W.2d at 498.

## III. Application

■ The defensive theory was that Appellant had permission to sign her husband's name during the marriage and she did not have the requisite intent to defraud. On cross-examination of the State's only witness, Appellant sought to impeach the complainant with evidence that Appellant held a substantial child support arrearage judgment against him at the time of his testimony. We believe the trial court was incorrect in excluding the evi-

dence because it applied the wrong relevancy test. It concluded that the evidence was not particularly probative because the child support arrearage judgment against the complainant was taken in 1997, some six years after the date of the alleged forgery by Appellant. But relevance, in this instance, is not measured by whether the existence of a large monetary judgment against the complainant makes the existence of Appellant's intent six years earlier more probable or less probable, but by whether the evidence will help the jury assess the credibility of the complainant and assess the probative value of his testimony on direct.[5] We hold that it was an abuse of discretion for the trial court to limit this relevant avenue of cross-examination, and sustain point ten.

### HARM

◼ Because the error is constitutional, we will apply rule 44.2(a). *See* TEX.R.APP. P. 44.2(a); *Shelby*, 819 S.W.2d at 547. To determine whether harm occurs when cross-examination has been erroneously limited, a reviewing court should first assume that the damaging potential of the desired cross-examination was fully realized. *See Shelby*, 819 S.W.2d at 547 (citing *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438). Second, the court should review the error in connection with the following factors: (1) the importance of the testimony to the State's case; (2) whether the testimony was cumulative; (3) the absence or presence of corroborating or contradicting testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the State's case. *See id.* Finally, the reviewing court must also consider, in light of the first two prongs, if the error was harmless beyond a reasonable doubt. *See id.*

5. Evidence showing bias or motive covers a wide range, and the field of external circumstances from which bias may be inferred is infinite, encompassing all facts and circumstances that may be tested by human experi-

### ANALYSIS

◼ First, we will assume that the damaging potential of the cross-examination of the complainant was fully realized. *See id.* at 550. That requires us to presume that the jury was fully informed of the child support arrearage judgment in Appellant's favor against the complainant. We next apply the *Shelby* factors. *See id.*

### I. The Importance of Complainant's Testimony to the State's Case

The complainant was the State's only witness. He not only identified Appellant's handwriting on the application, but he also testified that Appellant had admitted to him that she had forged his name on it. He testified that she did not have permission to sign his name to anything. His testimony that Appellant diverted the mail to a post office box was arguably the only other evidence of her intent.

### II. Whether the Testimony was Cumulative

The testimony regarding the judgment was not cumulative in that there was no other evidence before the jury to lead to an inference that the complainant had a "money motive" after the divorce to slant his testimony. Although the jury heard the parties' divorce characterized on cross-examination as "bitter," the child support arrearage judgment was entered in October of 1997, over four years after the date of their divorce, and only six months prior to the date of the complainant's testimony.

### III. The Presence or Absence of Other Material Evidence

The next factor we must consider is the presence or absence of evidence corroborating or contradicting the testimony of the complainant on material points. *See*

ence which tend to show that a witness may shade his testimony for the purpose of helping to establish only one side of the cause. *See Carroll*, 916 S.W.2d at 497–98.

**182**

*id.* at 551. Appellant did not testify. Of the two witnesses proposed by the defense in the guilt-innocence phase, only one was allowed to testify in the jury's presence. This witness, who was Appellant's aunt, did not specifically contradict the testimony of the complainant on material points, but only testified briefly that she had known him approximately 20 years, and that in her opinion, he had been dishonest regarding the Appellant and the family situation.

## IV. The Extent of Cross–Examination Otherwise Permitted

As we have previously noted, there was testimony that the divorce was bitter. Additionally, Appellant's counsel attempted to impeach the complainant by showing that he was aware of the credit card account because it was listed in an inventory and appraisement filed by Appellant in the divorce case four months after the date of the alleged forgery. But again, this cross-examination dealt with matters that occurred in 1991, and while it was perhaps probative of Appellant's intent, cross-examination concerning possible bias and motive that arose several years after the divorce was unduly restricted.

## V. The Overall Strength of the State's Case

The State's case was relatively strong, given that the only witness through whom evidence of Appellant's intent might be inferred was the complainant. But assuming, as we must, that the jury was fully informed of the child support arrearage judgment taken against the complainant just six months prior to the time of his testimony, the State's case is weakened considerably.

Finally, we must determine, after assuming the jury was fully informed of the child support arrearage judgment, and having reviewed the error in light of the evidence actually before the jury, whether the error was harmless beyond a reasonable doubt. *See id.* Because the complainant was the State's only witness, there was little or no evidence contradicting his testimony on material points, and the cross-examination of the complainant was restricted to matters probative of Appellant's intent but not of bias or motive of the complainant, we cannot conclude beyond a reasonable doubt that the denial of constitutionally guaranteed cross-examination was harmless.

### CONCLUSION

Having sustained point ten and determined that the error was not harmless, we reverse the conviction and remand the case for a new trial.