ACCEPTED
06-14-00133-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/5/2015 5:10:29 PM
DEBBIE AUTREY
CLERK

CAUSE NUMBER 06-14-00133-CR
IN THE
COURT OF APPEALS
SIXTH APPELLATE JUDICIAL DISTRICT OF TEXAS
AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/8/2015 3:20:00 PM
DEBBIE AUTREY
Clerk

APPEAL FROM THE 8TH JUDICIAL DISTRICT OF FRANKLIN COUNTY, TEXAS

Trial Cause No. F-8840

DAVID MICHAEL DOLLINS
Appellant

V.

THE STATE OF TEXAS,
Appellee

BRIEF FOR APPELLANT

Martin Braddy
Attorney at Law
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(500) 885-2704 fax

1

# IDENTITY OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38(a), the following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

**APPELLANT:**
Steven DeWayne Pruitt

Appellate Counsel
Martin Braddy
121 Oak Avenue, Suite A
Sulphur Springs, TX 75482
(903) 885-2040
(903) 500-2704 fax

Trial Counsel
Wade Forsman
Post Office Box 918
Sulphur Springs, TX 75482

**APPELLEE:**
The State of Texas

Honorable Will Ramsay
District Attorney
8th Judicial District
110 Main Street
Sulphur Springs, TX 75482
(903) 885-0641
(903) 885-0640 fax

**TRIAL COURT:**
8th Judicial District Court
Hopkins County, Texas

Judge Eddie Northcutt
118 Church St.
Sulphur Springs, TX 75482
Phone: (903) 438-4022

# TABLE OF CONTENTS

Table of Contents                                                    3

Index of Authorities                                                4-5

Statement of the Case                                                6

Issues Presented                                                     6

Statement of Facts                                                   6

Summary of Argument                                                  10

Argument                                                             10

   I. Trial Court Improperly limited Appellant's cross-          10
      examination of deputy ricks in violation of the
      Confrontation Clause

   A. Preservation of Error                                        11

   B. Standard of Review                                           11

   C. Confrontation Clause Violation                               12

   D. Harmful Error Analysis                                       16

Conclusion and Prayer                                                21

Certificate of Service                                               21

# INDEX OF AUTHORITIES

**Cases**

Alexander v. State, 949 S.W.2d 772, 774–75 (Tex.App.-Dallas 1997, pet. ref'd) .......... 13

Davis v. State, 203 S.W.3d 845, 850-51 (Tex. Crim. App. 2006) .......... 17

Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) .......... 14

Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.2006) .......... 14

Hayden v. State, 296 S.W.3d 549, 554 (Tex.Crim.App.2009) .......... 15, 16

Johnson v. State, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) .......... 12

Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) .......... 14, 16

Martin v. State, 173 S.W.3d 467 (Tex.Crim.App. 2005) .......... 11

McDaniel v. State, 3 S.W.3d 176, 180 (Tex.App.-Fort Worth 1999, pet. ref'd) .......... 14

Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) .......... 11

Pope v. State, 161 S.W.3d 114, 124 (Tex. App. 2004) *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006) .......... 13,14

Rankin v. State, 41 S.W.3d 335, 345 (Tex.App.-Fort Worth, 2001 pet. ref'd)     13

Sauceda v. State, 129 S.W.3d 116, 120 (Tex.Crim.App.2004)     11

United States v. Landerman, 109 F.3d 1053, 1061–62 (5th Cir.1997)     12

Virts v. State, 739 S.W.2d 25, 28–29 (Tex.Crim.App.1987)     13

Walker v. State, 300 S.W.3d 836, 844 (Tex.App.-Fort Worth 2009)     13, 14, 16

## STATEMENT OF THE CASE

Appellant was indicted in Cause Number F-8840 for Escape and in Cause Number F-8839 for Aggravated Assault with a Deadly Weapon. After jury selection, but prior to evidence being presented, the State dismissed the Aggravated Assault charge. Appellant pled "not guilty" to Escape and proceeded to trial before a jury and elected to have the jury set the punishment upon a finding of guilt. The jury found Appellant guilty of Escape as indicted. The jury set the punishment at two years and six months in the Institutional Division of the Texas Department of Criminal Justice without a recommendation for probation. The trial court sentenced Appellant in accordance with the jury's verdict. The trial court certified Appellant's right to appeal and Appellant timely filed a Notice of Appeal.

## ISSUES PRESENTED

Did the trial court improperly limit Appellant's cross-examination of Deputy Ricks in Violation of the Confrontation Clause of the Sixth Amendment?

## STATEMENT OF FACTS

On October 15, 2013, Deputy Patricia Ricks, then employed by the Franklin County Sheriff's Department, responded to a 911 call from Appellant's residence regarding a disturbance. (R.R. Vol. 4 pg. 30-32). When Deputy Ricks arrived at the Franklin County residence she knocked on the residence's door and was met by

Jerry and Linda Dollens, Appellant's grandparents. (R.R. Vol. 4 pg. 32-33). The deputy was told that Appellant was in his bedroom with his girlfriend, Robin Clark. (R.R. Vol. 4 pg. 33-34). Deputy Ricks testified that, upon entering the bedroom, she was informed by Ms. Clark that Appellant had held a knife to her throat and threatened to kill her earlier that evening. (R.R. Vol. 4 pg. 36). The deputy testified that Linda Dollens told her the same thing. (R.R. Vol. 4 pg. 36).

The deputy asked Appellant to step outside to talk to her and Appellant told the deputy that she needed to leave and attempted to push her out of the door. (R.R. Vol. 4 pg. 37). As the deputy grabbed and pushed Appellant out of the door, he ran away from her to a silver truck. (R.R. Vol. 4 pg. 37). The deputy testified that "I went out after him. And before I got down the steps, I told him that he was under arrest for assault on his girlfriend. And he turned around and came back and come back up the steps, turned around in front of me, placed his hands behind his back, and told me that -- go ahead and arrest me." (R.R. Vol. 4 pg. 37-38). The deputy placed her personal pink colored handcuffs on Appellant and testified that she placed him in the back seat of her patrol truck. (R.R. Vol. 4 pg. 38, 82-83).

Deputy Ricks testified that when the back-up officer, Leo Herrera, arrived she moved Appellant from the patrol truck to Officer Herrera's patrol car. (R.R. Vol. 4 pg. 39). Officer Leo Herrera testified that when he arrived Deputy Ricks and Appellant were standing outside of her patrol truck with Jerry Dollens. (R.R. Vol.

7

4 pg. 57). Deputy Ricks testified that during the move from her truck to Officer Herrera's car she again told Appellant that he was under arrest. (R.R. Vol. 4 pg. 40). She testified that Appellant told her that he was not going to jail and questioned her regarding the identity of the 911 caller and why he was going to jail. (R.R. Vol. 4 pg. 40-41). Appellant was talked into Officer Herrera's patrol car by Deputy Ricks. (R.R. Vol. 4 pg. 58). Officer Herrera testified that he doesn't remember exactly what was said but that Deputy Ricks possibly said that Appellant was under arrest and was going to jail. (R.R. Vol. 4 pg. 63). While Deputy Ricks and Officer Herrera was away from the patrol car they heard a noise and returned to find that Appellant was no longer inside and a window was rolled down, although there is no indication which window was down. (R.R. Vol. 4 pg. 44, 59).

The record does not indicate whether Appellant was placed into the front seat or back seat of Officer Herrera's patrol car. However, Officer Herrera testified that Jerry Dollens spoke to Appellant through the front of the patrol vehicle. (R.R. Vol. 4 pg. 59). Officer Herrera does not indicate whether a window was rolled down to facilitate the conversation or was rolled up following the conversation between Appellant and Jerry Dollens. (R.R. Vol. 4 pg. 59). Deputy Ricks concluded that Appellant rolled the window down himself prior to exiting the patrol car by the window. (R.R. Vol. 4 pg. 45). However, the record does not reflect whether

8

Deputy Ricks was aware of the conversation between Appellant and Jerry Dollens in the patrol car.

Later that evening, Appellant called Deputy Rick's cell phone and spoke to her three times. (R.R. Vol. 4 pg. 47-48). The second call Appellant asked the deputy "what charges he was being charged with." (R.R. Vol. 4 pg. 48). Deputy Ricks informed Appellant that he was being with assault with a deadly weapon, but that he would need to contact the sheriff "on the escape charge." (R.R. Vol. 4 pg. 48).

Deputy Ricks testified that she did not take a formal statement from Robin Clark nor did she seize as evidence a knife she believed was used during the incident, although she claimed to have observed it. (R.R. Vol. 4 pg. 49-52). The deputy claimed that "they" would not allow her to take the knife. (R.R. Vol. 4 pg. 52). Jerry Dollens testified that no conversation of any kind took place about a knife and that at no time did Linda Dollens or he refuse to give a knife to law enforcement. (R.R. Vol. 4 pg. 87). During the punishment phase of the trial, Robin Clark testified that Appellant never took a knife out or put a knife to her throat. (R.R. Vol. 4 pg. 142). Linda Dollens' testimony contradicted this assertion. (R.R. Vol. 4 pg. 125). Ms. Clark also testified that Appellant has never harmed her or said he was going to harm her. (R.R. Vol. 4 pg. 142).

On October 15, 2013, Deputy Ricks obtained an arrest warrant for Appellant charging the offense of Aggravated Assault stemming from the events of the incident at issue in this case. (R.R. Vol. 4 pg. 71-74, Defense Ex. 1).

## SUMMARY OF ARGUMENT

The trial court limited Appellant's cross-examination of Deputy Ricks in violation of the Confrontation Clause. Appellant attempted to cross-examine Deputy Ricks regarding whether she obtained or asked for a written statement from Robin Clark, the alleged victim of the Aggravated Assault. The State made a relevancy objection to the line of questioning and the trial court sustained it announcing that "we're not going to try the Aggravated Assault case." Ms. Clark's statement went to the heart of Deputy Ricks' claim for having probable cause to arrest Appellant for felony Aggravated Assault, an element of the offense. Therefore, the trial court had no discretion to limit Appellant cross-examination under the Sixth Amendment guarantee to the right of confrontation. This constitutional error was harmful and the verdict should be overturned.

## ARGUMENT

**I.    TRIAL COURT IMPROPERLY LIMITED APPELLANT'S CROSS-EXAMINATION OF DEPUTY RICKS IN VIOLATION OF THE CONFRONTATION CLAUSE**

The trial court abused its discretion in refusing to allow Appellant to fully cross-examine Deputy Ricks regarding her decision to not obtain a formal statement from Robin Clark.

### A. Preservation of Error

Appellant began a line of cross-examination questions of Deputy Ricks regarding whether she obtained a statement from Ms. Clark. (R.R. Vol. 4 pg. 49-50). The State made an objection "to this line of questioning as to relevance." (R.R. Vol. 4 pg. 50). The trial court stated "[w]e're not going to try the aggravated assault case. I'll sustain the objection." (R.R. Vol. 4 pg. 37-38).

### B.    Standard of Review

Generally speaking, the standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion. Martin v. State, 173 S.W.3d 467 (Tex.Crim.App. 2005) *citing* Sauceda v. State, 129 S.W.3d 116, 120 (Tex.Crim.App.2004). Appellate courts will uphold a trial court's ruling on the admissibility of evidence "as long as the trial court's ruling was at least within the zone of reasonable disagreement...." Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991).

However, when the ruling limits a defendant's cross-examination of a witness the Confrontation Clause is implicated. The Texas Court of Criminal Appeals has recently held "in this context … until it can be 'determine[d] that the cross

examination satisfied the Sixth Amendment, the [trial] court's discretion' simply 'does not come into play." Johnson v. State, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014), *citing* United States v. Landerman, 109 F.3d 1053, 1061–62 (5th Cir.1997). Consequently, when reviewing a trial court's ruling that limits a defendant's right to fully cross-examine a witness, an appellate court should first determine whether the Sixth Amendment was satisfied. If it has been, then determine whether the trial court abused its discretion in making an evidentiary ruling.

## C. Confrontation Clause Violation

The trial court's limitation of Appellant's cross-examination of Deputy Ricks violated the Confrontation Clause under the Sixth Amendment.

The Court of Criminal Appeal recently discussed the application of the Confrontation Clause to a defendant's right to cross-examine witnesses in Johnson v. State. The Court explained,

> "[t]he Sixth Amendment to the United States Constitution provides, in relevant part, that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' While, as its name would suggest, this 'Confrontation Clause' generally protects the defendant's right to physically "confront" his accusers face-to-face, this is hardly

12

the only right protected by the Confrontation Clause. Rather, '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,]' because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested."

Johnson v. State, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014).

"Hence, the right to cross-examine a testifying state witness extends to any matter that could reflect on the witness's credibility. This includes impeaching the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." Pope v. State, 161 S.W.3d 114, 124 (Tex. App. 2004) *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006), *citing* Virts v. State, 739 S.W.2d 25, 28–29 (Tex.Crim.App.1987), Rankin v. State, 41 S.W.3d 335, 345 (Tex.App.-Fort Worth, 2001 pet. ref'd), Alexander v. State, 949 S.W.2d 772, 774–75 (Tex.App.-Dallas 1997, pet. ref'd). Thus, the trial court should give the defendant great latitude to reveal any relevant facts that reflect on the credibility of the witness. Walker v. State, 300 S.W.3d 836, 844 (Tex.App.-Fort Worth 2009) citing Pope, 161 S.W.3d at 124. For purposes of witness credibility, "the test of relevancy is not whether the answer sought will expound any of the main issues, but whether it will aid the court or jury

13

in appraising the credibility of the witness and assessing the probative value of the direct testimony." Walker, 300 S.W.3d at 844, *citing* McDaniel v. State, 3 S.W.3d 176, 180 (Tex.App.-Fort Worth 1999, pet. ref'd).

However, there are several areas where cross-examination may be inappropriate, and in those cases, the trial judge has the discretion to limit cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). A trial judge may limit cross-examination based on concerns about harassment, prejudice, confusion of the issues, the safety of the witness, or interrogation that is repetitive or only marginally relevant. Pope, 161 S.W.3d at 124.

"Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence. In weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail. The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

Confusion of the issues "refers to a tendency to confuse or distract the jury from the main issue of the case." Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). Unless the inquiry on cross-examination is addressing an issue that relates to the charged offense or the credibility of the witness, "allowing a party to delve into the issue beyond the limits of cross-examination wastes time and confuses the issue." Hayden v. State, 296 S.W.3d 549, 554 (Tex.Crim.App.2009).

Here, the defense strategy was to develop a reasonable doubt regarding two elements of the offense required by the indictment and Court's Charge. First, that the arresting officer, Deputy Ricks, did not have probable cause to arrest Appellant. Second, that the probable cause to arrest was sufficient only for misdemeanor Assault, not felony Aggravated Assault, by eliminating the probable cause that a knife was used or exhibited during the Assault.

The State's evidence of probable cause was limited to the testimony of Deputy Ricks regarding what she was told by Robin Clark and Linda Dollens. Therefore, the credibility of Deputy Ricks regarding what she was told by Robin Clark was critical to a determination of whether probable cause to arrest Appellant for the felony Aggravated Assault existed beyond a reasonable doubt.

Whether or not Deputy Ricks took a statement from Robin Clark that evening, or at all, is important in determining whether the deputy was really told

15

what she claimed by Ms. Clark. The jury could have formed a reasonable doubt as to the credibility of the deputy regarding the statement that developed the probable cause based on the lack of a written or recorded statement from Ms. Clark reiterating the deputy's claim. What Robin Clark really told Deputy Ricks that evening was essential to two elements of the offense. Therefore, the line of question addressed two main issues in the offense at hand and the credibility of the only witness offered by the State as to those issues.

Consequently, the limitation of the cross-examination of Deputy Ricks regarding the statement of Robin Clark did not "avoid harassment, prejudice, confusion of the issues, endangering the witness, [or] the injection of cumulative or collateral evidence." Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The limitation was not necessary to prevent "confuse or distract [of] the jury from the main issue of the case." Gigliobianco v. State, 210 S.W.3d 637, 641 (Tex.Crim.App.2006). Instead, it would have aided the "jury in appraising the credibility of the witness and assessing the probative value of the direct testimony." Walker, 300 S.W.3d at 844.

Therefore, the trial court committed Constitutional Error by unreasonably limiting Appellant's cross-examination of Deputy Ricks in violation of the Confrontation Clause of the Sixth Amendment.

**D. Harm Analysis**

"[W]hen a trial court unconstitutionally restricts cross-examination, the reviewing court first assumes that "the damaging potential of the cross-examination" had occurred. The reviewing court then asks: Would the admission of that impeachment evidence, in the context of the trial as a whole, likely have made any significant impact upon the minds of an average jury? To decide that question, the Court set out a number of non-exclusive factors, including:

(1) The importance of the witness's testimony in the prosecution's case;

(2) Whether the testimony was cumulative;

(3) The presence or absence of evidence corroborating or contradicting the witness's testimony on material points;

(4) The extent of cross-examination otherwise permitted; and

(5) The overall strength of the prosecution's case.

Most of these factors apply regardless of whether the constitutional error was in the admission or exclusion of evidence. But the initial "assumption" that the damaging potential of the cross-examination had been realized applies only when the trial court restricts cross-examination or excludes evidence. In those instances, the reviewing court must determine whether it is convinced, beyond a reasonable doubt, that the fact-finding process was reliable even if the improperly restricted or

excluded evidence is factored into the analysis." <u>Davis v. State</u>, 203 S.W.3d 845, 850-51 (Tex. Crim. App. 2006).

Therefore, assuming that Appellant had been successful in challenging the credibility of Deputy Ricks regarding the statement of Robin Clark that established probable cause to arrest Appellant for the felony Aggravated Assault, the question is whether the Court finds that, beyond a reasonable doubt, that would not have had an impact on the outcome.

## 1. The importance of the witness's testimony in the prosecution's case

Here, Deputy Ricks' testimony was essential in establishing the elements of the offense. The State called only two witness, Deputy Ricks and Officer Herrera. Deputy Ricks' testimony established all of the elements of the offense. Officer Herrera merely provided support for the deputy's assertion that Appellant was placed inside his patrol car and later left the patrol car without permission of law enforcement. If the jury did not believe Deputy Ricks beyond a reasonable, then they could not have convicted Appellant.

## 2. Whether the testimony was cumulative

Deputy Ricks' testimony regarding what she claims she was told by Robin Clark was not cumulative. The State did not call Ms. Clark or any other witness regarding the conversation between Deputy Ricks and Ms. Clark. Although Ms. Clark was available to testify and did testify at punishment, the State chose to call

only Deputy Ricks regarding the deputy's claim of probable cause. If the State had called Ms. Clark, one would assume that she would have testified, as she did at punishment, that Appellant did not assault her with a knife or otherwise. It would be a safe assumption that she would have denied having told Deputy Ricks that Appellant did so that evening.

### 3. The presence or absence of evidence corroborating or contradicting the witness's testimony on material points

Other evidence was developed during trial that contradicted Deputy Ricks' testimony regarding material issues. Most significantly, Deputy Ricks testified that, although she observed the knife used by Appellant during the assault, she did not seize it as evidence because "they" did not allow her. (R.R. Vol. 4 pg. 52). Jerry Dollens contradicted this assertion testifying that no conversation of any kind took place about a knife and that at no time did Linda Dollens or he refuse to give a knife to law enforcement. (R.R. Vol. 4 pg. 87). Furthermore, it is nonsensical to believe that law enforcement cannot seize evidence used in a crime found in "plain-view" because a defendant's family doesn't want them to seize it.

### 4. The extent of cross-examination otherwise permitted

Appellant was allowed to cross-examine Deputy Ricks regarding matters other than the taking of Robin Clark's statement. However, that line of questioning was cut off by the trial court and not allowed to be fully developed.

When asked if she had obtained a statement from Ms. Clark, the deputy initially replied that she did not recall. (R.R. Vol. 4 pg. 49). After being referred to her report, Deputy Ricks then changed her testimony stating that "I believe she told me that she would come in the next day to write a statement." (R.R. Vol. 4 pg. 50). As Appellant's trial counsel began to press Deputy Ricks regarding whether she asked for or obtained a written statement, the State objected and the trial court shut down the line of questioning. (R.R. Vol. 4 pg. 50).

It is likely that Appellant's trial counsel interpreted the trial court's ruling as applying, not only to the taking of Ms. Clark's statement, but also to the taking of a statement of Linda Dollens. That would explain the lack of attempted cross-examination regarding whether a written statement was obtained from Ms. Dollens.

### 5. The overall strength of the prosecution's case

The State's case, as presented, was weak and depended solely on the credibility of Deputy Ricks. She was the sole witness called by the State to prove the elements of the offense. Further, her testimony was contradicted by Jerry Dollens. There was no audio, video, or forensic evidence admitted, although Officer Herrera testified that his patrol car was equipped with a video camera. The State chose to not call anyone present during the statement's that established

20

probable cause, although all were present to trial to testify. Also, no incriminating statements of Appellant were admitted at trial.

Considering these factor and assuming that the cross-examination would have been effective in challenging Deputy Ricks' credibility regarding Ms. Clark's statement to her that evening, this Court should find that the limitation on cross-examination had some impact on the outcome of Appellant's trial. Therefore, the error was harmful and the verdict should be overturned.

## **CONCLUSION AND PRAYER**

It is for the reasons contained herein that Appellant would respectfully pray that this Court of Appeals for the Sixth District reverse the judgment of conviction of the Appellant and remand the case to the 8th Judicial District for retrial.

Respectfully submitted,

/s/ Martin Braddy
Martin Braddy
Attorney for Appellant
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(903) 500-2704 fax

21

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to 8TH Judicial District Attorney, Will Ramsay, on this the 5th day of January, 2015.

/s/ Martin Braddy
Martin E. Braddy

**WORD COUNT CERTIFICATION**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 3,311 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Martin Braddy
Martin E. Braddy